### COPPARD v. MARTIN.

(Circuit Court of Appeals, Fifth Circuit. November 23, 1926.)

No. 4723.

I. **Equity** ⊜⇒57—Under equitable doctrine, assignee of money to be received in future has right thereto as soon as money is paid.

If attempted assignment by corporation of money to be received in future was valid, assignee had right thereto as soon as money was paid, because of doctrine that equity regards that as done which ought to be done.

**2. Bankruptcy ⟨key⟩188(1)—Agreement to reimburse stockholder for money advanced out of receipts constitutes a. valid lien, and is defense to action by trustee to recover alleged preferences after corporation's bankruptcy (Rev. St. Tex. 1925, art. 4000; Bankruptcy Act, § 67d [Comp. St. § 9651]).**

Agreement of corporation, in consideration of loan by one of its stockholders, that he should be reimbursed out of receipts from sale of goods, *held* to create a valid lien, notwithstanding Rev. St. Tex. 1925, art. 4000, and constituted a defense, under Bankruptcy Act, § 67d (Comp. St. § 9651), to action by trustee for recovery of alleged preferences after bankruptcy of corporation.

**3. Fraudulent conveyances ⟨key⟩142—Pledge of accounts receivable creates lien, though accounts are collected by pledgor.**

Pledge of accounts receivable for mercantile business creates a lien, though such accounts be retained and collected by pledgor.

**4. Fraudulent conveyances ⟨key⟩142—No lien exists, if pledgor of accounts receivable is not required to make substitutions.**

If pledgor of accounts receivable is not required to make substitutions, but authorized to use proceeds, no lien exists.

**5. Bankruptcy ⟨key⟩188(1)—Lien created by assignment of money to be received in future is not lost by failure to use first moneys received.**

Lien created by agreement to reimburse loan out of receipts from sale of goods was not lost, as against trustee of bankrupt corporation, by failure to reimburse out of first moneys received, where corporation acquiesced therein and creditors were not affected.

**6. Bankruptcy ⟨key⟩164—Stockholder's loan to corporation to retire stock for legitimate purpose held not such as would make repayment to him under agreement a preference (Bankruptcy Act, § 60a [Comp. St. § 9644]).**

Loan by stockholder to retire stock, made for legitimate purpose, *held* not to constitute actual fraud, such as would create preference, under Bankruptcy Act, § 60a (Comp. St. § 9644), as to payments in accordance with agreement for repayment of loan.

In Error to the District Court of the United States for the Western District of Texas; Duval West, Judge.

Action by M. Coppard, trustee of the estate of Dollinger's, Incorporated, bankrupt, against B. C. Martin. Judgment for defendant, and plaintiff brings error. Affirmed.

Frank H. Booth and Jas. D. Crenshaw, both of San Antonio, Tex., for plaintiff in error.

Claud J. Carter, of San Antonio, Tex. (Douglas & Carter, of San Antonio, Tex., on the brief), for defendant in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. This is an action at law, brought by the trustee in bankruptcy of the estate of Dollinger's, Incorporated, to recover of the defendant Martin approximately $4,500, received by him from the bankrupt in settlement of a debt within four months prior to bankruptcy, on the theory that when the payment was made Dollinger was insolvent, and Martin had reasonable cause to believe that such payment would enable him to obtain a greater percentage of his debt than other creditors of the same class would receive in contravention of section 60a of the Bankruptcy Act (Comp. St. § 9644).

The defense was that the payment of the amount in question was made in satisfaction of a valid lien, given and accepted in good faith, for a present consideration, and was therefore protected by section 67d of the Act (Comp. St. § 9651). There was a verdict and judgment for defendant.

The evidence discloses that the authorized capital stock of the corporation was $10,000, of which C. J. Dollinger and his wife controlled a majority, themselves owning stock of the par value of $4,800; and, having control of the corporation's affairs, they were conducting the business in such an extravagant manner that, if continued, would render failure inevitable; that in this situation a meeting of the stockholders was held, and defendant Martin, who owned stock of the par value of $1,500, lent to the corporation $4,500, which was used by it in the purchase of the Dollinger stock, and its return to the treasury of the corporation, in consideration of which Martin was made manager of and put in charge of the business, under an agreement that his loan should be repaid to him out of the first receipts from the sale of goods; that Martin continued as such manager and reimbursed himself out of receipts of sales, though some of the first receipts were used to pay other creditors; that Martin did not know at the time he advanced the loan that the corporation was insolvent, and the auditor's report indicated that it was not, but he reimbursed himself for his loan within less than four months prior to the time the corporation was adjudicated a bankrupt, and when he did so he knew that the corporation was insolvent.

The trustee concedes that Martin, although he was a stockholder, and the other minority stockholders acted in good faith in arranging for the purchase of the stock owned by Dollinger and his wife, that there was a total absence of actual fraud, and that the judgment should be affirmed, if a valid lien was created by the agreement that Martin

should be reimbursed out of the receipts from the sale of goods. The case presented, therefore, is not different than it would be if Martin were not a stockholder, but a stranger to the corporation, insisting by reason of his loan that he had a lien superior to the unsecured claims of general creditors.

[1-4] The corporation attempted to make a present assignment of money to be received in the future. If that assignment was valid, Martin had an equitable right to the money as soon as it was paid, because of the doctrine that equity regards as done that which ought to be done. Bank of Oakman v. Union Coal Co. (C. C. A.) 15 F.(2d) 360 (present term). And that right related back to the date of his contract. Sexton v. Kessler, 225 U. S. 90, 32 S. Ct. 657, 56 L. Ed. 995. We are of opinion that a valid lien was created. The pledge of accounts receivable of a mercantile business creates a lien, though such accounts be retained and collected by the pledgor, and substitutions of future accounts be authorized. Van Iderstine v. National Discount Co., 227 U. S. 575, 33 S. Ct. 343, 57 L. Ed. 652; Sexton v. Kessler, supra.

However, if the pledgor is not required to make substitutions, but is authorized to use the proceeds of accounts as he sees fit, no lien exists. Benedict v. Ratner, 268 U. S. 353, 45 S. Ct. 566, 69 L. Ed. 991. A pledge of accounts receivable being sufficient to create a lien, we think it must follow by analogy that a pledge of money received from the sale of goods is also sufficient for that purpose, for the principle is the same. The necessity of surrender of dominion by the pledgor applies to tangible property, but it does not apply to a pledge of indebtedness. See Young v. Upson (C. C.) 115 F. 192, cited with approval by the Supreme Court in Benedict v. Ratner, supra. Consequently, article 4000, Texas Revised Civil Statutes, which in effect makes void a lien upon a stock of goods exposed for sale in the regular course of business, where possession and control remain in the owner of the goods, has no application to the pledge of accounts receivable or proceeds from the sale of goods.

[5, 6] Martin's lien was not lost by reason of his failure to reimburse himself out of the first moneys received from the sale of goods. The acquiescence of the corporation that he reimburse himself out of later receipts amounted to a substitution, and did not result in any injury to the general creditors represented by the trustee. Nor does the fact that the money borrowed by the corporation was used with Martin's knowledge, not in payment of debts, but to retire the stock of

Dollinger and his wife, sustain the trustee's contention that a legal, though not an actual, fraud was committed. The loan was made for the legitimate purpose of saving the corporation from Dollinger's extravagance, and in the hope that it might survive at a time when Martin believed it, and it appeared, to be in a solvent condition.

The judgment is affirmed.