## In re STICK.

### No. 6106.

District Court, D. Maryland.

Sept. 12, 1932.

John A. Hoober, of York, Pa., and Charles O. Clemson, of Westminster, Md., for Eastern Nat. Bank.

Brown & Shipley, of Westminster, Md., for trustee.

WILLIAM C. COLEMAN, District Judge.

The sole question here presented is whether a certain claim of the Eastern National Bank of York, Pa., in the amount of $3,574.-67, with interest, should be allowed as a preferred claim in the distribution of the assets of the bankrupt's estate. The question arises upon the petition of the aforementioned creditor of the bankrupt, and upon an order issued as a result of that petition requiring the trustee to show cause why the referee should not be directed so to treat this claim.

The creditor bank's claim is based upon a confessed judgment obtained by it in the circuit court for Carroll county, Md., as assignee of a four months' note of the bankrupt, given in March, 1930, judgment upon which was entered on August 7, 1930. The giving of the note was supported by valid consideration, namely, it was in connection with the purchase of certain real estate by the bankrupt.

The question is governed by the following provision, section 67f of the Bankruptcy Act (11 USCA § 107(f)):

"That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid. And the court may order such conveyance as shall be necessary to carry the purposes of this section into effect. Nothing herein contained shall have the effect to destroy or impair the title obtained

by such levy, judgment, attachment, or other lien, of a bona fide purchaser for value who shall have acquired the same without notice or reasonable cause for inquiry."

In the present case the petition was filed and the adjudication in bankruptcy both took place on November 26, 1930, that is to say, within four months of the entry of the judgment, which is the determining date. Wilson v. Nelson, 183 U. S. 191, 198, 22 S. Ct. 74, 46 L. Ed. 147; In re Richards (C. C. A.) 96 F. 935. Therefore we need not now concern ourselves with conditions that may have surrounded the execution or negotiations of the note, but only with the circumstances surrounding the obtaining of the lien. Suffice it to say that at this latter date no new consideration is shown to have been given. Accordingly, the judgment is void under the above-quoted section of the Bankruptcy Act unless at the time it was entered, namely, on August 7, 1930, Stick, the bankrupt, was not in fact insolvent. The burden of establishing that he was then insolvent is upon the trustee. In re Ann Arbor Machine Company (D. C.) 278 F. 749.

Insolvency is not to be presumed from the later adjudication or admissions of the bankrupt. Gratiot State Bank v. Johnson, 249 U. S. 246, 39 S. Ct. 263, 63 L. Ed. 587; Liberty National Bank v. Bear, 265 U. S. 365, 44 S. Ct. 499, 68 L. Ed. 1057. The record, stipulated into the present case, of the proceedings had in the circuit court for Carroll county, in an unsuccessful attempt to vacate the judgment, fails to disclose insolvency. This testimony is very meager and fragmentary and of little probative value in the present proceeding. The stipulation to the effect that the sheriff, after the fi. fa. was issued on the judgment of the circuit court, returnable to the first Monday of the following October, did not attempt to sell Stick's property in satisfaction of the judgment (and presumably it could not have been sold prior to the aforementioned return day) because "he was advised that bankruptcy proceedings against Stick would be docketed at an early date, * * *" is not conclusive. Assuming, without deciding because, as hereinafter explained, the assumption is immaterial, that the knowledge of the sheriff may be imputable to the officials of the bank who conducted the transaction with Stick in connection with his note, it still does not appear from this very meager testimony that even the sheriff himself had, at the time the judgment was entered, namely, August 7th, reasonable cause to believe that Stick was then insolvent or in contemplation of bankruptcy, although

the sheriff may have been of such mind two months later. On the contrary, there is the evidence that Stick stated to the attorney and one of the directors of the creditor bank, on April 5, 1930, that he had no defenses to the note and submitted a financial statement on his own behalf showing an excess of assets over liabilities of some $50,000. But it is significant that this statement bears date of January 1, 1930; and while the bank, through its attorney, appears to have investigated Stick's financial condition at that time, and to have been sufficiently satisfied of his solvency to warrant accepting the note and ultimately paying it, such testimony is not sufficient to overcome the unequivocal statement of the bankrupt made, under oath, to this court, that he was insolvent on August 7, 1930, and the statement of the trustee that the bankrupt was then hopelessly insolvent. The trustee was thoroughly familiar with the bankrupt's financial condition, and testified as a result of personal investigation that, at the time of the entry of the judgment in question, the bankrupt did not, as he (the bankrupt) had erroneously (whether in good or bad faith is not clearly proven) stated to the bank, still own the coal lands which represented more than one-third of his alleged assets. Testimony of this nature must prevail over such evidence as there is to the contrary, when all the circumstances surrounding the latter are fully weighed.

It is to be noted that section 67f of the Bankruptcy Act is very definite and mandatory in its requirements. That is to say, "all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt. * * *" Thus we are not concerned in interpreting this section with what the creditor may have known, or had reasonable cause to know or believe, respecting the bankrupt's financial condition. Such questions are, to be sure, material in applying section 67c of the Bankruptcy Act (11 USCA § 107 (c), but this section is obviously contradictory of the subsequent provisions of section 67f, and is not controlling. In re Richards, supra.

For the reasons above given, the petition of the Eastern National Bank of York, Pa., must be dismissed, and an order will be passed to this effect, directing the referee to allow its claim merely as an unpreferred one in the distribution of the assets of the bankrupt's estate.